UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEITH BRADLEY,<br><br>    *Plaintiff*,<br><br>v.<br><br>MEIJER STORES L.P. and WILLIAM BRANNON,<br><br>    *Defendants* | No. 23 CV 1269<br><br>Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

On January 11, 2023, Plaintiff Keith Bradley commenced this suit in the Circuit Court of Cook County, Illinois, against his former employer—Defendant Meijer Stores Limited Partnership ("Meijer")—and William Brannon, alleging race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, along with state law claims for "harassment"[1] and the intentional infliction of emotional distress. [Dkt. No. 1, Ex. A]. Defendants removed the case to this Court on March 1, 2023.[2] [Dkt. No. 1]. Shortly thereafter, Defendants moved to compel arbitration and for dismissal of the case pursuant to Federal Rule of Civil Procedure

---

[1] The legal basis for Plaintiff's harassment claim is not apparent from the face of the complaint. Defendants proceed on the assumption that Plaintiff's harassment claim is an alternative theory of liability under Title VII. [Dkt. No. 10, 7] ("Plaintiff brings claims for race discrimination and harassment under Title VII . . . ."). Notably, however, although Count I of Plaintiff's complaint references Title VII, Count II does not. [Dkt. No. 1, Ex. A].

[2] This Court has jurisdiction over Plaintiff's Title VII claim pursuant to 28 U.S.C. §§ 1441(a) and 1331. It has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a), as those claims "derive from a common nucleus of operative fact"—indeed, the same incident—as Plaintiff's federal claim. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

12(b)(3) and sections 3 and 4 of the Federal Arbitration Act ("FAA"), Pub. L. 68–401, 9 U.S.C. §§ 3–4. [Dkt. No. 9].

In that motion, Defendants claim that Plaintiff signed an arbitration agreement during new-hire orientation that requires him to arbitrate "all employment-related claims or disputes" that might arise between himself and Meijer as well as any of its "employees." [Dkt. No. 9, ¶ 3–4]; [Dkt. No. 10, 1–2]; [Dkt. No. 10-1, Ex. A-1]. There is no question, and Plaintiff does not attempt to dispute, that the scope of the alleged arbitration agreement is broad enough to cover the claims Plaintiff attempts to bring in this case. Plaintiff, however, categorically denies ever signing the arbitration agreement. [Dkt. No. 12, ¶¶ 1–2]; [Dkt. No. 15, ¶ 1].

As the Court will explain in detail below, this denial prevents the Court from granting the motion to compel arbitration at this time. Where a party opposing arbitration puts "the making of [an] arbitration agreement . . . in issue," the FAA entitles that party to discovery—and, if necessary, a trial—on the threshold question of whether the parties have formed a contract. See 9 U.S.C. § 4; *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002); *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 509–10, 511 (7th Cir. 2003); *Gupta v. Morgan Stanley Smith Barney, LLC*, 2018 WL 2130434, at *2 (N.D. Ill. May 9, 2018).

I. Background

    A.    The May 14 Incident

The facts of this case are straightforward. Plaintiff began working for Meijer as an Asset Protection Officer[3] on January 3, 2022, at a Meijer store in Evergreen Park, Illinois. [Dkt. No. 1, Ex. A, ¶ 5]. In that role, Plaintiff was trained to respond to incidents of retail theft. [*Id.* at ¶ 6]. Plaintiff was not permitted to "restrain" shoplifters "from leaving" with stolen goods—instead, he was taught to "take a picture of [the] suspect's license plate," the idea being that should Meijer choose to file a police report, it would have a means of identifying the suspected thief. [*Id.* at ¶¶ 6, 8].

On May 14, 2022, Plaintiff was speaking with the store greeter when a woman made for the exit with a case of beer. [*Id.* at ¶ 8]. On her way out, the greeter asked for the woman's receipt. [*Id.*] The woman told the greeter that she "threw the receipt out" in the store. [*Id.*] After the woman walked out, Plaintiff told the greeter that he would photograph her license plate and check the store's security camera footage to make sure she was telling the truth. If she wasn't, they could "file a police report." [*Id.*]

When the woman saw Plaintiff photographing her vehicle, she drove her car onto the store's front sidewalk and told Plaintiff that she would "go[] back into the store to [f]ind her receipt." [*Id.*] She returned thirty seconds later, informed Plaintiff that she could not find the receipt, and drove off. [*Id.*] Within minutes of leaving, the

---

[3]    This is the title Plaintiff gives to his position. Defendants use the title "Store Detective." [Dkt. No. 1, Ex. A, ¶ 3]; [Dkt. No. 10, 2].

3

woman called the store to complain about how she was treated. [*Id.*] Incensed, the store's Assistant Store Manager—Defendant William Brannon—demanded that Plaintiff speak with him in the "security office." [*Id.*]

There—in the presence of two of Plaintiff's coworkers—Brannon allegedly proceeded to scream at and belittle Plaintiff for his actions. [*Id.*] Plaintiff claims to suffer from a "nervous condition" and that Brannon's explosive and humiliating conduct left him a "nervous wreck." [*Id.*] He ultimately felt that he had no choice but to resign, which he did the very same day. [*Id.*] Plaintiff—who is Black—claims that Brannon mistreated him on account of his race and, in essence (although he does not use the technical label), that the May 14 incident led to his constructive discharge.

### B. The Arbitration Agreement

Defendants' motion to compel does not respond to the allegations of Plaintiff's complaint, it merely argues that this Court is not the proper forum for the claims raised. The motion is premised on an arbitration agreement that Plaintiff is said to have signed on January 3, 2022, his first day on the job. As the parties agree and as Plaintiff's timecard attests, Plaintiff spent four hours that day completing various onboarding activities. [Dkt. No. 10-1, Ex. A, ¶ 4]; [Dkt. No. 14-1, Ex. A, ¶ 4]; [Dkt. No. 15, ¶ 2] ("Plaintiff admits attend[ing] onboarding on January 3, 2022, from 9:00[a]m to 1:00.").

Defendants claim that during that session, Plaintiff was "provided . . . with a unique password and user ID that allowed him access to the [Meijer] intranet site." [Dkt. No. 10-1, Ex. A, ¶ 4]; [Dkt. No. 10, 1]. According to Defendants, Plaintiff was

4

asked to use these credentials to log in to the intranet and navigate to "a . . . screen entitled 'Team Member Documents.'" [Dkt. No. 10-1, Ex. A, ¶ 5]; [Dkt. No. 10, 2]. There, Plaintiff was allegedly required to sign thirteen "New Hire Agreements," among them the arbitration agreement in question. [Dkt. No. 10-1, Ex. A, ¶ 5]; [Dkt. No. 10-1, Ex. A-3].

According to Defendants, each new hire agreement could be electronically signed by clicking a box acknowledging the employee's acceptance of its terms. [Dkt. No. 10-1, ¶ 6]. Clicking on the box would timestamp the page to reflect "the date and time of agreement." [*Id.*] Because the agreements could only be accepted sequentially, an employee's failure to agree to one document would prevent him from agreeing to the next. [*Id.* at ¶ 7]. Defendants say that if Plaintiff failed to accept *any* of the documents, "his onboarding process would have stopped and he would not have been employed as a Store Detective." [*Id.*] Defendants' records reflect that Plaintiff "agreed to Meijer's Arbitration Agreement . . . at 01/03/2022 12:52:03 PM." [*Id.* at ¶ 8].

Plaintiff remembers things differently. According to him, on January 3, 2022, he (1) watched videos on Meijer's policies and procedures (as well as a video on the life of Meijer's founder); (2) completed his Form W-2 (on the computer of Human Resources Manager Angie Sisler); (3) received his employee Badge, ID number, and handbook; (4) took a tour of the store; and (5) was assigned to Deon Edmond for further training. [Dkt. No. 12, ¶ 1]; [Dkt. No. 15, ¶ 2]. The next day, he watched additional videos on Meijer's company policies. [Dkt. No. 12, ¶ 2].

5

Plaintiff squarely denies signing any of the "New Hire Agreements"—including the arbitration agreement—identified by Defendants in their motion to compel. [*Id.* at ¶ 2] ("Plaintiff denies Electronic signatures on All documents on January 3, 2022 at 12:52 pm."). To be sure, in response to the characterization that Plaintiff simply "does not remember signing" the arbitration agreement, Plaintiff states, "Plaintiff didn't state[ ] he doesn't remember, he stated that *he never signed any Such documents*."). [Dkt. No. 15, ¶ 1 (emphasis added)].

## II.  Legal Standard

The Federal Arbitration Act ("the FAA"), provides two routes by which a party may invoke arbitration. Where a plaintiff sues on claims allegedly covered by an arbitration agreement, the defendant can seek a stay of the action. 9 U.S.C. § 3. Alternatively, a party aggrieved by another's failure or refusal to arbitrate under a written arbitration agreement may petition a court for an order directing that the arbitration proceed. *Id.* at § 4.

But arbitration is "strictly 'a matter of consent.'" *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). Therefore, relief under either of these sections is appropriate only where three elements are present: "(1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017).

The FAA entitles a party opposing arbitration to special procedural protections under certain circumstances. As relevant here, if "the *making* of [an] arbitration agreement"—rather than the *scope* of that agreement—is "in issue," courts are required to "proceed summarily to the trial" of that issue. 9 U.S.C. § 4 (emphasis added).

The FAA does not expressly identify the evidentiary standard a party opposing arbitration must meet before the making of an arbitration agreement is "in issue" within the meaning of the statute. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). Like most circuits, however, the Seventh Circuit applies the standard applicable to motions for summary judgment under Federal Rule of Civil Procedure 56. *Id.* To avoid compelled arbitration, then, a party denying the existence of an arbitration agreement must "demonstrate that a genuine issue of material fact warranting a trial exists." *Id.* This requires more than a general denial of "the facts upon which the right to arbitration rests; the party must identify *specific evidence* in the record demonstrating a material factual dispute for trial." *Id.* (emphasis added).

Of course, there is no record without discovery. It is only fair, then, that courts afford a party denying the existence of an arbitration agreement some opportunity to bolster their denial through targeted discovery. It would make little sense to apply a summary judgment standard to a party who has not been afforded the opportunity to build the factual record necessary to determine whether there is a genuine issue of material fact as to the formation of the contract. *Boykin v. Fam. Dollar Stores of Mich., LLC*, 3 F.4th 832, 841 (6th Cir. 2021).

7

**III.  Analysis**

The issue before the Court is a narrow one: whether there is an enforceable written agreement to arbitrate. As the Court stated above, the scope of the arbitration agreement Plaintiff is alleged to have signed is undoubtedly broad enough to require arbitration of each of his claims. Not only does it cover "all claims that arise out of or relate to" Plaintiff's employment, the agreement goes on to expressly enumerate "[c]laims of constructive discharge," "[e]mployment-related torts, such as intentional/negligent infliction of emotional distress," and "[c]laims of employment discrimination" and "harassment." [Dkt. No. 10-1, Ex. A-1, 2]. Furthermore, there is no question that Plaintiff is refusing to arbitrate—it is his position that he is under no obligation to do so because he never consented to arbitration. *Scheurer*, 863 F.3d at 752. Therefore, the only thing Meijer must prove is the first element described above: that the arbitration agreement between it and Plaintiff actually *exists*—a proposition Plaintiff vigorously contests.

To reiterate, Plaintiff does not merely state that he does not *remember* signing the arbitration agreement (or the other "New Hire Agreements" identified by Defendants). He categorically denies signing any of them, a fact well within his personal knowledge. [Dkt. No. 15, ¶¶ 1–2]. In support of this denial, Plaintiff recounts in some detail the onboarding activities that he *did* complete on January 3, 2022, and calls into question the plausibility of his signing every new hire agreement at 12:52 pm. [Dkt. No. 12, ¶ 1–2]; [Dkt. No. 15, ¶ 2].

8

This denial is at least an attempt to put the "making" of the arbitration agreement "in issue" within the meaning of section 4 of the FAA. Plaintiff's denial, in its current form, would likely not suffice to create a genuine issue of fact under Federal Rule of Civil Procedure 56. Although whether Plaintiff signed or did not sign the arbitration agreement is clearly within his personal knowledge, he has not filed a sworn affidavit or declaration memorializing his denial under oath. Nevertheless, were he to do so, a trial might well become necessary.

There is a growing consensus among the courts of appeals that a party's sworn statement that he did not sign an arbitration agreement—if spelled out in sufficient detail—is sufficient to create a genuine issue of fact necessitating a trial. *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50–51 (2d Cir. 2022); *Boykin*, 3 F.4th at 839–40; *Camara v. Mastro's Rests., LLC*, 952 F.3d 372, 374–75 (D.C. Cir. 2020); *Kirleis v. Dickie McCamey & Chilcote, P.C.*, 560 F.3d 156, 161–62 (3d Cir. 2009).

*Boykin v. Family Dollar Stores of Michigan* is illustrative. In that case, as in this one, the plaintiff brought employment discrimination claims against a former employer. 3 F.4th at 836. The employer moved to compel arbitration on the basis of an arbitration agreement it claimed the plaintiff signed through a password-protected web portal. *Id.* In support of its motion, the employer produced internal records "show[ing] that Boykin completed the session at 10:00:58 a.m. on July 15, 2013." *Id.* The employee responded "with an affidavit stating under oath that he 'unequivocally' did not consent or acknowledge an arbitration agreement on July 15,

9

2013 (or at any other time)." *Id*. The district court granted the employer's motion and dismissed the case, discounting the affidavit as "self-serving." *Id*. at 836, 838.

The Sixth Circuit reversed, holding that the employee's affidavit "create[d] a factual dispute over whether [the employee] authorized the arbitration contract." *Id*. at 840. That entitled the employee "to targeted discovery and a trial on the question." *Id*. at 841. In so holding, the Court emphasized that the employee's affidavit stated not that the employee *couldn't remember* signing the document, but rather that he affirmatively did not sign the document. *Id*. at 840. Because the employee had "personal knowledge over whether he completed the arbitration session," this was sufficient to create a genuine issue of fact. *Id*. at 841–42.

The Second Circuit reached a similar result in *Barrows v. Brinker Restaurant Corporation*, which bears a marked resemblance to this case. 36 F.4th 45. In *Barrows*, a former employee sued a restaurant under the Fair Labor Standards Act and state labor laws. *Id*. at 47 n.2. The defendant restaurant moved to compel arbitration on the basis of an arbitration agreement the employee allegedly signed electronically as a part of the restaurant's "onboarding process." *Id*. at 47–48.

As here, the restaurant attached to its motion several affidavits describing the onboarding process. *Id*. In those affidavits, company officials explained that new employees were required to agree to a number of documents, including several arbitration agreements, through the restaurant's password-protected intranet. *Id*. It also produced (1) a copy of an arbitration agreement purportedly bearing the plaintiff's electronic signature, (2) "timesheets show[ing] that [the employee] was

10

working at the restaurant on the day the electronic signatures were affixed to the [agreement]," and (3) evidence that the restaurant "was the owner of the IP address of the computer on which the arbitration agreements . . . were completed." *Id.*

In the face of such compelling evidence, the employee filed a sworn declaration, in which she "adamantly, and categorically, denied having electronically signed any arbitration agreement." *Id.* at 49. The declaration denied, "[c]omplet[ing] any electronic paperwork . . . during her initial hiring," "[seeing] or sign[ing] the arbitration agreement[s]," "us[ing] any of her employer's computers at the [restaurant] for any purpose," or "own[ing], or liv[ing] in a house with, a computer while employed" by the restaurant. *Id.*

The district court granted the restaurant's motion to compel and dismissed the case, "discount[ing] the evidentiary value of [the] sworn declaration," because the employee did not produce additional evidence substantiating her denials. *Id.* at 50. The Second Circuit reversed. Observing that "'[t]here is nothing . . . to suggest that nonmovants' affidavits alone cannot—as a matter of law—suffice to defend against'" a motion to compel arbitration, it held that the employee's affidavit was more than sufficient to create a genuine issue of fact necessitating a trial under section 4 of the FAA. *Id.* at 50–51 (quoting *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998)). As in *Boykin*, the Court emphasized what the employee's affidavit did *not* allege—that "she [could not] *recall* signing [the] agreement (as opposed to *denying* she has done so) . . . ." *Id.* at 51 (emphasis original).

11

The Seventh Circuit has yet to decide a case quite like the one presented here. But in *Tinder v. Pinkerton Security*, the Seventh Circuit implicitly recognized the distinction drawn by *Boykin* and *Barrows*, when it held that an affidavit asserting only that the employee did not remember a fact did not raise a genuine issue of material fact. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735–36 (7th Cir. 2002). This is quite different from an affidavit which affirmatively asserts that a fact simply does not exist. *Gupta v. Morgan Stanley Smith Barney*, 2018 WL 2130434, at *2-3 (N.D. Ill. May 9, 2018) (an employee's denial in a declaration about receipt of an email created a genuine dispute regarding whether an agreement to arbitrate was formed).

Here, there is no question that Plaintiff has done more than allege a "convenient memory lapse," *Boykin*, 3 F.4th at 839, and the Court is persuaded that Plaintiff is—at the very least—entitled to memorialize his denial under oath and conduct limited discovery to bolster his case for trial.[4] Defendants, of course, will have the opportunity to challenge Plaintiff's denial through discovery. If, during discovery, information comes to light undermining Plaintiff's denial as a matter of law,

---

[4] The Court recognizes that this case differs from *Boykin*, *Barrows*, and even *Tinder* in one key respect—Plaintiff has yet to memorialize his denial in a sworn form. This will ultimately prove necessary should Defendants renew their motion after discovery. Under Federal Rule of Civil Procedure 56(c)(1) and (c)(1)(A), applicable to motions for summary judgment (and, under *Tinder*, motions to compel arbitration), "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Briefs are not themselves "materials in the record," so it is important that a party disputing the existence of an arbitration agreement set forth that denial, along with the factual basis for that denial, in a sworn affidavit or declaration. Only then is the party's testimony properly within "the record" before the Court. At this stage of the litigation, however, Plaintiff's denial is sufficient to put "the making of" the arbitration agreement "in issue" within the meaning of § 4, particularly in light of his *pro se* status. Certainly, Plaintiff's denial—grounded as it is in his personal knowledge of the onboarding activities he completed on January 3, 2022—would be admissible testimony at trial. Plaintiff need only take the technical step of stating that denial in the proper form.

12

Defendants can renew their motion to compel and identify the evidence in the record they believe eliminates the need for a trial. Otherwise, Plaintiff will have an opportunity to convince a jury of his peers (should he elect a jury trial) of the truth of his denial.

## IV. Conclusion

For the reasons stated above, the Court defers ruling on Defendants' motion to compel arbitration, pending discovery and, if necessary, a trial. [Dkt. 9.]. At the April 25, 2023 status hearing, the parties should be prepared to discuss the timeframe and scope of the limited discovery required to address the existence of an agreement to arbitrate.

Enter: 23-cv-1269

Date April 21, 2023

Lindsay C. Jenkins
United States District Court Judge